UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| RICARDO RAMIREZ, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. G-11-35 |
| § | |
| RICK THALER, § | |
| § | |
| Respondent. § | |

### MEMORANDUM AND ORDER OF DISMISSAL

The petitioner, Ricardo Ramirez (#1416075), seeks habeas corpus relief under 28 U.S.C. §2254, challenging a 2007 state felony conviction of murder. The respondent has filed a motion for summary judgment. (Doc. No. 5). Ramirez has filed a response. (Doc. No. 6). Based on a careful consideration of the pleadings, the record and the applicable law, this court grants the respondent's motion and by separate order enters final judgment dismissing the case. The reasons for this ruling are set out below.

**I.   PROCEDURAL HISTORY**

Ramirez was convicted of murder in the 23rd Judicial District Court of Brazoria County, Texas. Ramirez pled not guilty but the jury found him guilty and sentenced him to thirty-seven years incarceration in TDCJ-CID on January 12, 2007. The conviction was affirmed by the intermediate court of appeals on August 21, 2008. *Ramirez v. State,* No. 14-07-00060-CR, slip op. (Tex.App.---Houston [14th] Aug. 21, 2008, pet. ref'd). Ramirez filed a petition for discretionary review ("PDR") which was refused by the Texas Court of Criminals Appeals on February 11, 2009. His state writ application was denied without written order on the findings of the trial court after hearing by the Texas Court of Criminal Appeals on November 3, 2010.

Ramirez filed the instant federal writ of habeas corpus on December 1, 2010, and argues that he is entitled to relief for the following reasons:

1. Trial counsel was ineffective because he referred to the shooting as "the murder" in the presence of the jury.

2. Trial counsel was ineffective because he failed to request jury instructions on lesser included offenses.

## II. FACTUAL BACKGROUND

Below are the facts of Ramirez' crime, as summarized by the appellate court:

In the early morning of February 11, 2006, appellant fatally shot Brian Pearson at a party held by a mutual acquaintance. The events that transpired before and after the shooting were described by witnesses at appellant's trial as follows.

The party began the preceding evening at a trailer owned by the parents of John Rambo. Allie Dickinson and Pearson gave appellant a ride to the party. Many people attended and alcohol was served. At the trailer, appellant removed a black Glock handgun from his waistband and waved it around. Several times, he removed a bullet from the gun, tossed it in the air, and caught it. At one point in the evening, appellant disassembled the gun and reassembled it. He also briefly left the party with another attendee, Ashley Bock, to shoot his gun on a nearby back road. According to Bock, appellant told her he released his anger by shooting his gun.

> Several witnesses testified that appellant and Pearson were friends or friendly, but Dickinson and Jonathan Ashley, who was not present at the party, testified that Pearson and appellant were not friends.

After Bock and appellant returned, appellant argued with Raymond "Bubba" Wilder. The argument escalated and, according to Wilder, appellant pulled out the gun, cocked it, and then returned it to his waistband. Wilder explained that by cocking the gun, appellant chambered a bullet. Wilder further testified that appellant pushed him over some chairs, then reached for the gun again. Several witnesses testified that at this point, Pearson "bear-hugged" the appellant in an effort to defuse the situation. Pearson and appellant then went into a back room. Although several people gathered around the room, appellant and Pearson told everyone not to worry and to leave them alone.

Joshua Gay, another party-goer, found appellant's cell phone and went to the back room to return it. According to Gay, appellant pulled him into the room and shut the door. Gay testified that appellant and Pearson were reminiscing and play-

fighting in the room. Gay stated that appellant and Pearson engaged in a slapping match, taunting each other by saying things such as, "[M]y Grandma hits harder that." "Pearson knows how I play." According to Gay, Pearson smiled, leaned into the gun, and told appellant, "You are not going to squeeze that trigger." Gay testified that appellant pulled the trigger, he heard a gunshot, and Pearson fell to the ground.[1]

John Rambo testified that he was outside when he heard the gunshot. He stated that he ran inside the trailer and saw appellant coming out of the back room. Rambo testified that he could tell from the look on appellant's face that "something bad had happened." Rambo stated that when he entered the back room, he found Pearson's body. He yelled Pearson's name and touched his face, but received no response. Rambo then shouted at everyone to leave, called 911, and went outside. When the police arrived, Rambo told them appellant had shot Pearson.

In the meantime, appellant had fled the scene. According to Bock and another party attendee named Derek Baker, appellant jumped into Bock's car as she and Baker were leaving, shouting at them to "go!" Both Bock and Baker testified that appellant was distraught and shocked, and he told them he did not know a bullet was in the chamber when he pulled the trigger. Bock and Baker further stated that appellant seemed suicidal and inconsolable. Bock drove appellant and Baker to another friend's residence where they attempted to console appellant and discuss what had happened. After about an hour, Bock called 911 from another room. Police officers arrived shortly after her call, and appellant was arrested without incident.

After hearing the evidence and argument of counsel, the trial court instructed the jury on the defense of mistake-of-fact as follows:

> Upon the law of mistake of fact, you are instructed that it is a defense to prosecution that the defendant, through mistake, formed a reasonable belief about a matter of fact, if his mistaken belief negated the kind of culpability required for commission of the offense.
>
> "Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the actor.
>
> Now bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that the defendant... intentionally or knowingly pulled the trigger of a handgun, but you

---

[1] The medical examiner testified that the decedent died from a single gunshot wound to the head and that the muzzle of the gun was against the decedent's head when the gun was fired.

3

> further find from the evidence or you have a reasonable doubt thereof, that at the time of such conduct by the defendant...that the defendant, through mistake, formed a reasonable belief about a matter of fact, to-wit: that the handgun did not have a bullet in its chamber at the time of its discharge, or if you have a reasonable doubt thereof, you will acquit the defendant and find him not guilty.

The jury found appellant guilty of murder as charged in the indictment, assessed punishment at thirty-seven years confinement in the Texas Department of Criminal Justice, Institutional Division, and imposed a $10,000 fine. The trial court sentenced appellant accordingly, and this appeal timely ensued.

### III.     STANDARD OF REVIEW

This court reviews Ramirez' petition for writ of habeas corpus under the federal habeas statutes as amended by the Antiterrorism and Effective Death Penalty Act of 1996. 28 U.S.C.§ 2254; *Woods v. Cockrell*, 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson,* 127 F.3d 409, 413 (5th Cir. 1997) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). Subsections 2254(d)(1) and (2) of the AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits." An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

In ruling on a motion for summary judgment, this court views the evidence through "the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254 (1986). The court must look "through the prism of AEDPA deference." *Ward v. Dretke*, 420 F.3d 479, 499 (5th Cir. 2005).

The AEDPA provides as follows, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)  (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state-court decision is "contrary to" Supreme Court precedent if (1) the state court's conclusion is "opposite to that reached by the [the Supreme Court] on a question of law" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362 (2000). A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 390-91. In deciding whether a state court's application was unreasonable, this court considers whether the application was "objectively unreasonable." *Id.*; *Penry v. Johnson*, 215 F.3d 504, 509 (5th Cir. 2000). Fact

5

findings by the state court are "presumed to be correct . . . and [receive] deference . . . unless . . . based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Hill*, 210 F.3d at 485 (quoting U.S.C. § 2254(d)(2)).

Pure questions of fact are governed by § 2254(d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). In addition, a state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1) unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules. Section 2254(e)(1) - which mandates that findings of fact made by a state court are "presumed to be correct" - overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless the petitioner can "rebut [ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002). Moreover, once a party has been given a reasonable time to respond to an opposing party's motion for summary judgment but fails to make any attempt to do so, the Court may rule upon

the evidence before it and may treat that evidence as undisputed. *Eversley v. MBank Dallas*, 843 F.2d 172, 173-74 (5th Cir. 1988).

## IV.  DISCUSSION

### A.  The Claim of Ineffective Assistance of Trial Counsel

Ramirez complains that he was denied effective assistance of counsel at trial because counsel (1) referred to the killing of Pearson as a murder while in front of the jury; and (2) failed to request a lesser included offense instruction.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, the defendant must show that (1) counsel's representation was deficient (i.e. that it fell below an objective standard of reasonableness) and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland*, 466 U.S. at 687-91 & 694. In other words, defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Id.*

"It is well settled that effective assistance is not equivalent to errorless counsel or counsel judged ineffective by hindsight. Rather, inquiry must be made into the totality of the circumstances surrounding counsel's performance to determine whether reasonably effective representation was provided." *Tijerina v. Estelle*, 692 F.2d 3, 7 (5th Cir. 1982). A court reviewing an ineffectiveness claim must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence or that, under the circumstances,

7

the challenged action might be considered sound trial strategy. *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993).

Under § 2254(d)(1), the Court must analyze whether the state court's ultimate decision that petitioner did not make the required *Strickland* showing was contrary to, or an unreasonable application of the *Strickland* standard. *See Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2004) (the test is not whether petitioner makes the *Strickland* showing). However, "a federal habeas court is authorized by § 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). A federal habeas court should assume the state court applied the correct "clearly established Federal law" in making its decision. *Schaetzle*, 343 F.3d at 443.

Ramirez alleges that his trial counsel rendered ineffective assistance of counsel for the two reasons stated in the first paragraph. To establish "deficient performance," Ramirez must show his attorney's errors were "so serious that his counsel was not functioning as the 'counsel' that the Sixth Amendment guarantees." *Strickland*, 466 U.S. 668, 687. An attorney is not required to make futile objections, nor to overcome the presumption that the challenged action would be considered sound trial strategy. *Id.* at 691. Trial counsel will not be deemed ineffective for failing to advance a defensive theory when his decision was a reasonable strategic choice based upon a "professional assessment of the plausibility of the defense and its likelihood of success at trial." *Moreno v. Estelle*, 717 F.2d 171, 177 (5th Cir. 1983). Importantly, even when counsel's performance is deficient, a petitioner will not prevail on a claim of ineffective assistance of counsel unless he can satisfy the second prong of the test, which requires a showing of prejudice.

In evaluating Ramirez' complaints about the performance of his counsel under the AEDPA, the issue before this Court is whether the Texas Court of Criminal Appeals could reasonably have concluded that Ramirez' complaints about his trial counsel's performance failed to satisfy either prong of the *Strickland* analysis. *Schaetzle*, 343 F.3d at 444.

1. The Claim that Trial Counsel Failed to Refrain From Referring to the Killing of Pearson as a "Murder" While in Front of the Jury

Ramirez complains that trial counsel (Jimmy Phillips, Jr.) was ineffective because counsel twice referred to the killing of Pearson as a "murder" while in the presence of the jury.

> The Prosecutor: ... Could you tell us what you were looking for in order to make sure it was the type of evidence . . . the evidence that you were looking for to continue the investigation with regard to the murder of Brian Pearson"?
>
> Trial Counsel: Your Honor, we are going to object to anything that has to do with the murder of Brian Pearson as far as the evidence because he did not collect it and had no personal knowledge of where these things came from.  6 RR 87.

The second instance in which trial counsel used the word "murder" occurred during trial counsel's cross-examination of Deputy Sheriff Mark Adams, who investigated the scene of the offense. The use of the word "murder" was used in the context of Adams' investigation.

> Trial Counsel: Your honor, Defendant's 15 and 16 are relevant. They are relevant to the testimony that's already come in. They are relevant as to the condition of the surroundings at the time he investigated the murder.  6 RR 129-30.

The state court noted that trial counsel's affidavit did not give a factual reason as to why the word "murder" was used, "other than to say it could be because this reference occurred in the context of testimony from a witness for the state, who had classified the shooting as a murder." 6 RR 84; 6 RR 82.  The respondent correctly notes that trial counsel vigorously challenged any

9

characterization of the shooting as a murder (*See* 6 RR 63), arguing that the shooting was a "tragic accident." *See* 4 RR 7-9; 6 RR 18; 7 RR 22-45.

The state court was faced with a record containing (1) testimony from witnesses who observed Ramirez waving the Glock handgun; (2) testimony from witnesses who testified that Ramirez stated he released his anger by shooting the gun; (3) testimony from witnesses that Ramirez argued with another individual at the party and pulled out the gun, cocked it and returned it to his waistband during the argument; (4) testimony from a witness who watched Ramirez shoot Pearson in the head when Pearson stated, "You are not going to squeeze that trigger"; and (5) testimony from a witness who saw Ramirez flee the scene of the incident. The state court's implicit factual finding rejecting the credibility of Ramirez' claim that the shooting was an accident and that he pulled the trigger unaware that a bullet was in the chamber is a reasonable determination of the facts in light of the evidence presented. Ramirez has presented this Court with no evidence, much less clear and convincing evidence, rebutting the presumption of correctness which this Court must afford the state court's factual finding on this matter. The presumption of correctness the AEDPA affords state court factual determinations applies not only to explicit fact findings but also to "those unarticulated findings" which are necessary to the state court's conclusions of mixed law and fact. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 & n. 11 (5th Cir. 2001), *cert. denied*, 537 U.S. 883 (2002). The state court reached express conclusions that Ramirez' complaint about his trial attorney using the word "murder" on two occasions throughout the entirety of the trial failed to satisfy the prejudice prong of *Strickland.*

> 2. <u>The Claim that Trial Counsel Failed to Request a Lesser Included Offense Instruction</u>

Ramirez also alleges that trial counsel was ineffective for failing to "request jury instructions on the lesser included offenses of manslaughter and negligent homicide." (Doc. No. 1, p.10). Ramirez contends that a lesser included offense instruction would have resulted in a lesser sentence.

The Texas Court of Criminal Appeals adopted the trial court's findings that Ramirez failed to show that counsel's conduct fell below the objective standard of reasonableness or that such alleged deficient conduct resulted in prejudice. Ramirez fails to demonstrate that he was entitled to a jury instruction on negligent homicide or manslaughter or that his counsel's performance was objectively unreasonable when he did not request such an instruction. Under Texas law, a defendant is entitled to a lesser included offense instruction when (1) the lesser included offense is included within the proof necessary to establish the offense charged, and (2) there is some evidence showing that if the defendant is guilty, he is only guilty of the lesser offense. *Hall v. State*, 225 S.W. 3d 524, 536 (Tex.Crim.App. 2007).

With respect to the lesser included offense of criminally negligent homicide, it is not enough that the defendant did not intend the result; the record must contain evidence that the defendant was unaware of the risk. *See Jackson v. State*, 248 S.W. 3d 369, 371-72 (Tex.App.---Houston [1st Dist.] 2007, pet. ref'd); *Cardenas v. State*, 30 S.W. 3d 384, 393 (Tex.Crim.App. 2000). At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct; the key to criminal negligence is found in the failure of the actor to perceive the risk. *Lugo v. State*, 667 S.W. 2d 144, 147-48 (Tex.Crim.App. 1984). In this case, trial counsel included in his affidavit the following:

> Under the circumstances of this case, there is no legal authority that would have supported an instruction on criminally negligent homicide in the court's charge to the jury. Criminally negligent homicide was requested and refused and filed with the clerk. I had a copy of the requested charges and would not have the formal copies if I did not request the charge. WR-74,339-01, p. 81-82

This Court's review of the evidence supports trial counsel's conclusion. Ramirez never testified that he acted negligently or recklessly. In fact, evidence overwhelmingly shows that Ramirez was acutely familiar with his weapon, including how to handle and fire it. He would not have been entitled to a lesser included offense instruction based on the evidence. (Pertinent to a determination of whether the evidence shows an awareness of the risk that circumstances exist or that the result will occur are facts such as a defendant's familiarity with the gun and its potential for injury; a defendant's conduct in handling the gun; how the weapon could be fired, and; how the weapon was actually fired, i.e. attendant circumstances. *See Thomas v. State*, 699 S.W.2d 845 (Tex.Crim.App. 1985)). Counsel was not required to make frivolous or futile motions or objections; nor was he required to request a lesser included offense that was not supported by the evidence.

Ramirez also alleges that trial counsel was ineffective for failing to request an instruction on the lesser included offense of manslaughter. This issue was discussed by the state court as follows:

> With regard to a jury instruction on the lesser included offense of manslaughter under the circumstances of this case...prior to trial, defense counsel received notice from the State that it intended to enhance the Applicant's punishment with a prior juvenile burglary conviction. The State also indicated that it would abandon the enhancement if the applicant was convicted of murder. As a result, the maximum length of confinement for a manslaughter conviction, if the enhancement was found to be true, would be the same for an un-enhanced murder conviction. Thus, a request for an instruction on the lesser included offense of manslaughter would have made no difference in terms of punishment. Therefore, the Court concludes that the failure of defense counsel to request an instruction on

12

this lesser included offense also did not adversely affect the proceedings against the Applicant.

As stated by the respondent, any supposition that Ramirez would have received a lesser sentence for manslaughter is purely conclusory. Trial strategy is rightfully left to the discretion of the trial attorney and the execution of that discretion is not reviewed with the benefit of hindsight. *See Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008). The appropriate question is whether the decision to undertake the challenged course of conduct was professionally reasonable from the perspective of counsel at the time the challenged course was undertaken. *See Martinez v. Quarterman*, 481 F.3d 249, 253 (5th Cir. 2007). In this case, trial counsel chose to limit the jury's decision to finding him guilty of murder based on either intentional or knowing conduct or to acquit him. Ramirez' inculpatory behavior and the consequences of his acts would have been the same whether the jury believed his acts constituted manslaughter instead of murder, and it is highly unlikely that a manslaughter conviction would have resulted in less punishment, especially given the enhancement.

For the foregoing reasons, the state habeas court's conclusion that the ineffective assistance of counsel claims failed to satisfy the prejudice prong of *Strickland* was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Nor was the state habeas court's conclusion based on an unreasonable determination of the facts in light of the evidence presented in Ramirez' state habeas corpus proceeding.

## V.    **CERTIFICATE OF APPEALABILITY**

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed

under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals ... '" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C.§2253(c)(1)).

Under the AEDPA, a petitioner must obtain a certificate of appealability before he can appeal the district court's decision. 28 U.S.C.§2253(c)(1). This court will grant a COA only if the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C.§ 2253(c)(2). In order to make a substantial showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As the Supreme Court made clear in its decision in *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003), a COA is "a jurisdictional prerequisite," and "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from the habeas petitioners." When considering a request for a COA, "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 325.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After considering all of the pleadings, the state court records, and the applicable law, the Court concludes that none of the issues presented in this case warrant a certificate of appealability under the applicable standard. Therefore, a certificate of appealability will not issue.

## VI. CONCLUSION

Based on the foregoing, the Court **ORDERS** that the respondent's motion for summary

judgment is **GRANTED,** the petition for writ of habeas corpus is **DENIED,** and a certificate of appealability is **DENIED.**  All pending motions are **DENIED.**

SIGNED at Houston, Texas this 9th day of February, 2012.

_____
Kenneth M. Hoyt
United States District Judge